**COLORADO FOOD PRODUCTS, INC., Plaintiff,**

v.

**Martin BARDON FONT, et al., Defendants.**

**No. CIV. 03–2348(RLA).**

United States District Court, D. Puerto Rico.

July 28, 2004.

Ada Sofía Esteves, David C. Indiano, Indiano & Williams, PSC, San Juan, PR, for Plaintiff.

Hazel I. Justison–Díaz, Santa Rosa, Bayamon, PR, Joseph Deliz Hernández, Bayamón, PR, for Defendant.

### ORDER IN THE MATTER OF MOTIONS FOR SUMMARY JUDGMENT

ACOSTA, District Judge.

The court will entertain plaintiff's motion for summary judgment as well as a cross-motion for summary judgment filed by codefendants JOSE BARDON and PROSUR, INC. ("PROSUR").

## PROCEDURAL BACKGROUND

Plaintiff instituted this action seeking to collect monies allegedly due for unpaid meat shipments to Puerto Rico. The original complaint named two corporations and two individuals as party defendants liable for payment of five outstanding invoices.

A Settlement Conference was held on March 22, 2004[1] at which time the defendants agreed for summary judgment to be entered as to codefendant PREMIUM FOODS CORP. ("PREMIUM") but limited to the principal sums charged in the first four invoices for a total of $64,142.60 exclusive of interest and attorney fees. Partial Judgment was issued accordingly.[2]

It was also agreed at that time that PREMIUM's liability for the fifth invoice as well as for interest charges and attorney fees on all five invoices would be addressed via a motion for summary judgment.

Further, faced with the allegations of non-involvement in the transactions alleged in the complaint made at the Settlement Conference by codefendants JOSE BARDON and PROSUR, plaintiff agreed to consider dismissing them subject to information to be provided by way of a sworn statement.

Given the uncertainties regarding which of the four named parties would remain as defendants in these proceedings, plaintiff's request to amend the complaint to include *alter ego* allegations and justify disregarding corporate formalities in this case was denied without prejudice at the Settlement Conference.[3]

In the meantime, disposition of the motions to dismiss the complaint previously filed by JOSE BARDON (docket No. 10) and MARTIN BARDON (docket No. 13) for failure to assert allegations against them personally were held in abeyance given the outstanding contingencies regarding the nature of the claims and the proper party defendants to these proceedings.

Thereafter, a barrage of motions ensued further complicating the procedural scene of what would seem a straightforward collection of monies case. At this time we shall examine the outstanding dispositive motions.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–61 (1st Cir.2000); *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 45 (1st Cir.1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *De-Novellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995).

**1.** *See* Minutes (docket No. 26).

**2.** *See* docket No. 68.

**3.** See Minutes (docket No. 26) p. 3.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO MARTIN BARDON AND PREMIUM [4]

As previously noted, two issues were raised by plaintiff in its motion for summary judgment. These are: (1) whether PREMIUM is liable for payment of the sums billed by plaintiff in its fifth invoice and (2) whether plaintiff is entitled to recover the interest and costs charged in its invoices for late payment.

### The Fifth Invoice

█ MARTIN BARDON acknowledges having placed the following orders with plaintiff herein on behalf of PREMIUM:

| Invoice | Amount |
| --- | --- |
| (1) # 1523–1 | $37,587.81 |
| (2) # 1171–1 | $38,901.73 |
| (3) # 2452–1 | $10,669.44 |
| (4) # 2472–1 | $ 1,983.62 |
| (5) # 2438–1 | $33,785.99 |

MARTIN BARDON avers, however, that with respect to the fifth invoice—the only one remaining at issue—he placed the order through JAVIER TORRES PAOLI, plaintiff's representative, with his (TORRES PAOLI's) understanding and approval that the merchandise was for a third party. MARTIN BARDON further affirms that based on MR. TORRES PAOLI's authorization the merchandise was released to another meat buyer, PREMIER COMMODITY TRADER, INC. According to affiant, he had done this type of business with plaintiff on three prior occasions with another meat buyer and "would not have dared ordered (sic) meat for third parties (pases) without their approval and knowledge, because of the risks involved." [5]

However, his version as to non-liability for the fifth invoice is discredited by the fact that MARTIN BARDON attempted to pay that debt directly to plaintiff without reference to PREMIER COMMODITY TRADER, INC., the third party. According to the sworn statement of JOSE BARDON his son (MARTIN) gave him (JOSE) instructions to pay the $33,785.99 due under that particular invoice with the understanding that PREMIER would pay him shortly and that would then cover the check. [6] JOSE BARDON further stated that unfortunately, PREMIER COMMODITY "reneged on their deal with my son and did not pay him for the meat that they had received [and] consequently, the check for $33,785.99 bounced." [7]

The documents on file indicate that: (1) MARTIN BARDON placed the order corresponding to the fifth invoice, (2) the merchandise always appeared under defendant's name and (3) it was released to a third party upon written instructions from MARTIN BARDON.

We find that the uncontested facts show that PREMIUM is liable for the outstanding sums charged in the fifth invoice # 2438–1.

### Interest and Collection Fees

Defendants contest the applicability of the 18% interest rate and collection fees charged by plaintiff in the complaint.

According to the sworn statement of JAVIER TORRES PAOLI, plaintiff's representative, no written purchase orders were prepared in plaintiff's business dealings with defendants but rather all orders were placed over the telephone. The prices for the selected merchandise were fixed during the phone call. A written confirmation would then be sent via mail and the meat ordered from suppliers in Australia with instructions for shipment to Puerto Rico. Upon its arrival in Puerto

---

4. Plaintiff withdrew its summary judgment request as to JOSE BARDON and PROSUR. *See* Reply tendered with docket No. 49.

5. Sworn Statement ¶ 9.

6. Sworn Statement ¶ 9.

7. Sworn Statement ¶ 10.

Rico the merchandise would be initially delivered to a warehouse [PONCE PACKING CO.] and stored under the name of COLORADO FOOD PRODS. pending inspection by the USDA. Once cleared by USDA plaintiff would then send instructions for the merchandise to be released to the buyer and the corresponding invoice sent.

JAVIER TORRES PAOLI further noted that "[s]ince the inception of our business relationship with ProSur, the terms of the invoices have always been eighteen percent (18%), as stated in our confirmation and invoice" [8] and neither PROSUR nor PREMIUM ever objected to those terms.

MARTIN BARDON does not deny PREMIUM's obligation to pay the principal sums due for merchandise ordered by him via telephone. Codefendant contends, however, that he never consented to the interest rates and collection charges demanded in the complaint. MARTIN BARDON argues that these conditions require his express consent to be enforceable and that there is no evidence of such acquiescence. In support of his argument of lack of evidence of consent codefendant points to the fact that no purchase orders were sent during the transactions nor did he sign any document consenting to the terms at issue.

 Contrary to defendants' suggestion, however, consent may be tacitly implied in circumstances where, as here, good faith dealings and reasonableness demand an affirmative rejection of unacceptable contract terms. IV–II José Ramón Vélez Torres, Curso de Derecho Civil, Derecho de Contratos 44–5 (Revista Jurídica de la Universidad Interamericana de P.R., Facultad de Derecho, San Juan, P.R.1990); I Luis Diez–Picazo, Fundamentos del Derecho Civil Patrimonial 110 (Ed. Tecnos, Madrid 1979); II–I José Puig Brutau, Fundamentos de Derecho Civil, Doctrina General del Contrato 61–3 (Bosch, Barcelona 1978).

It is undisputed that the *modus operandi* for the parties to carry out their business relationship in this case was a telephone order followed by an invoice. It is also undisputed that the invoices forwarded to PREMIUM contained the specific date when payment was due as well as the applicable penalties for late payment. If indeed those terms were unacceptable to MARTIN BARDON he had the duty to so indicate to plaintiff by explicitly and unequivocally rejecting them contemporaneously with the receipt of the invoice.[9]

Accordingly, we find that PREMIUM is liable for payment of the 18% interest charges and costs of collection, including reasonable attorney's fees and court costs.

### Conclusion

Based on the foregoing, plaintiff's Motion for Summary Judgment (docket No. 29) is **GRANTED**.[10]

Accordingly, PREMIUM is liable to plaintiff for the following sums:

— the principal sum of $33,785.99 billed in the fifth invoice # 2438–1, plus

— interest on all shipments in the sum of $28,762.38 accrued as of March 22, 2004 at a rate of 18% per annum beginning thirty one (31) days after each invoice date, and increasing at a rate of $48.29355 per diem, plus

---

**8.** Sworn Statement ¶ 19.

**9.** The mere fact that codefendant might not have paid attention to the fine print in the invoice is not cause to disregard its applicability if indeed he received these invoices.

**10.** *See also,* Opposition by MARTIN BARDON (docket No. 37); Opposition by PREMIUM (docket No. 38); Opposition and cross-motion for summary judgment by PREMIUM (docket No. 41); Plaintiff's Reply; Brief Response by PREMIUM and MARTIN BARDON (docket No. 63).

— attorney fees to be determined in these proceedings

Judgment shall be entered accordingly.

## CROSS–MOTION FOR SUMMARY JUDGMENT FILED BY JOSE BARDON & PROSUR

The court will now entertain the cross-motion for summary judgment filed by codefendants JOSE BARDON and PRO-SUR which stands unopposed.

The following are the uncontroverted relevant facts presented via the sworn statement of JOSE BARDON:

JOSE BARDON incorporated PROSUR and the same was in operations for four years until March of 2002 when he retired. PROSUR also ceased operations at that time. JOSE BARDON did not place any more orders with plaintiff, COLORADO FOOD PRODUCTS, INC. ("COLORADO FOOD PRODS.") after March 2002.

JOSE BARDON had previously done business with COLORADO FOOD PRODS. and had paid all outstanding business debts with them prior to his retirement and the ceasing of operations of PROSUR.

JOSE BARDON's son, MARTIN BAR-DON, later incorporated his own company, PREMIUM, and started doing business directly with COLORADO FOOD PRODS.

in 2002. JOSE BARDON was not involved in any way in the business or in the management of PREMIUM. JOSE BAR-DON merely helped his son in an advisory capacity and would also lend him money to pay some of his bills in order to help him stay afloat.

In relation to his role pertaining to Invoice # 2338–1 at issue in this litigation JOSE BARDON explained that when it arrived he had just returned from a vacation in Argentina and his son was away in the United States. He contacted his son and pursuant to his instructions JOSE BARDON sent a check to COLORADO FOOD PRODS. for $33,785.99 to cover the invoice. This information is also confirmed by MARTIN BARDON's affidavit.

██ Hence, the uncontested evidence[11] establishes that JOSE BARDON has no relationship with PREMIUM nor with any of his son's business dealings. He did not order any meat from COLORADO FOOD PRODS. after February 2002 nor is he nor PROSUR liable for payment of any of the sums collected in this litigation.

Accordingly, the cross-motion for summary judgment filed by PROSUR (docket No. 40) and the cross-motion for summary judgment filed by JOSE BARDON (docket No. 42) are **GRANTED** and the claims asserted against them in these proceedings are hereby **DISMISSED**.[12]

---

11. It is also important to note that since the beginning of this litigation codefendants JOSE BARDON and PROSUR have disclaimed any role in the underlying facts leading to this action. Their position has been consistently raised through various motions as well as proffers made by counsel on their behalf at the Settlement Conference. Even though plaintiff has not formally withdrawn the claims asserted against them it specifically desisted from pursuing its summary judgment request as to these two codefendants. Further, the subsequent discovery (docket No. 69 and 70) as well as the corporate veil issues (docket No. 48) have been addressed exclu-

sively to codefendants MARTIN BARDON and PREMIUM.

12. Based on our ruling, the following motions filed by JOSE BARDON are **MOOT**: Motion for Partial Dismissal (docket No. 10); Motion Requesting Pronouncement (docket No. 46); Brief Response; Motion for Extension of Time (docket No. 51.) Leave for plaintiff to file reply (docket No. 65) is **GRANTED**. Additionally, the following motions are therefore **MOOT** insofar as they address plaintiff's summary judgment petition: Opposition filed by PROSUR (docket No. 40); Opposition filed by JOSE BARDON (docket No. 42); and Brief

Judgment shall be entered accordingly.

IT IS SO ORDERED.

## PARTIAL JUDGMENT DISMISSING CLAIMS ASSERTED AGAINST CODEFENDANTS JOSE BARDON AND PROSUR, INC.

The court having dismissed the claims asserted against codefendants JOSE BARDON and PROSUR, INC. in these proceedings through its Order issued on this date, it is hereby

ORDERED AND ADJUDGED that the claims asserted against JOSE BARDON and PROSUR, INC. in these proceedings be and the same are hereby **DISMISSED**.

IT IS SO ORDERED.

Response filed by JOSE BARDON and PRO- SUR (docket No. 58).